# THE LAW FIRM
## OF



## RAVI BATRA

---

**THE BATRA BUILDING**
**142 LEXINGTON AVE.**
**NEW YORK, NEW YORK 10016**
**212-545-1993**

RAVIBATRALAW@AOL.COM
FAX: 212-545-0967

July 16, 2008

Via Electronic Filing
Hon. Magistrate Judge Roanne L. Mann
United States Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re:     Letter Motion seeking a) a protective order; b) an order quashing two subpoenas; and, c) an order compelling the production of service addresses for now non-party City employees actually involved in the harm caused to plaintiff  in: Marcus v. City of New York, 07 CV1810 (DLI) (RLM)

Respected Judge Mann:

        This letter motion seeks a) a protective order as to any records which may be maintained by the New York State Division of Criminal Justice Services regarding the plaintiff; b) an order quashing two subpoenas directed to the New York State Division of Criminal Justice Services; and, c) an order compelling the production of service addresses for now non-party City employees, previously identified as defendants' in the amended complaint, actually involved in the harm caused to plaintiff.

        On July 10, 2008 Your Honor declined to extend the plaintiff's time to serve additionally named persons employed by the municipal defendants and named in an amended complaint filed on February 8, 2008.  This Order was notwithstanding the City's admission: sorry judge, "it was an oversight," despite getting two letters requesting service information.   After the court conference on July 10, 2008, we sought service addresses for these same employees identified as defendants in the amended complaint, plus others, so that we could serve subpoenas to conduct their depositions [Exhibit 1].  Critically, the letter makes clear that our intention is to serve subpoenas.  Moreover, we also sought service addresses for other personnel who we have been able to partially identify through disclosure who are either witnesses, or worse yet still unidentified actors in the wrongdoing perpetrated against the plaintiff.  On July 14, 2008 we followed-up with another letter to the City renewing this request [Exhibit 2].

Incredulously, by letter dated July 14, 2008, the City suggested that they may be able to accept service of subpoenas "as a courtesy;" however, this flies in the face of their refusal to accept service of the complaint and is clearly an attempt to avoid disclosing information which would demonstrate that the plaintiff could not have served the newly named defendants [Exhibit 3].   We noted these inconsistences in a letter to the City dated July 15, 2008 [Exhibit 4].

Moreover, by that same letter the City asserts they will move to quash any subpoenas served on non-parties based upon a flagrant display of their frivolity that merits sanction.  The City claims that because the plaintiff only identified "three individuals" in his response to the City's second set of interrogatories, that the plaintiff must "articulate why the other individuals listed in plaintiff's recent letter should be subjected to the intrusion of a deposition before there is any reason to believe that they have even witnessed the incident or that they possess any relevant information within the meaning of Rule 26."  This claim raises incredulity and chutzpah to new heights, for the "new" defendants were already identified in the amended complaint.  The interrogatories provided descriptions of HHC officers involved in the incident who were not yet (and still are not) identified. Thus, the City is on actual notice as to who these employees are, what they are alleged to have done, and how at the very least these people are witnesses.  Furthermore, as municipal employees acting under color of law at the time, the City is responsible for their actions - and therein lies the reason the City is being so obstructionist.  It is inexcusable that the City can on one hand refuse service, then claim to possibly be willing to accept service - after winning the service argument and blocking the lawsuit against newly named municipal employees. On one hand they speak for and represent these non-parties, and on the other hand they claim they do not.  This bipolar litigation tactic must not be countenanced, and is not good faith.

Additionally, by letter dated July 10, 2008, the City sought, *inter alia*, authorizations from the plaintiff to disclose sealed records of arrests "on at least two separate occasions prior to the incident in question" unrelated to the instant action [Exhibit 5].   By letter dated July 11, 2008 [Exhibit 6], we objected to these noting that under New York law, unsupported charges resulting in "termination of a criminal action or proceeding against [the plaintiff] in favor of [the plaintiff]," are by operation of law, sealed. C.P.L. 160.50.  Furthermore, we advised counsel that C.P.L. 160.50 provides a statutory privilege, and that as the plaintiff made clear at his deposition, these "arrests" happened long ago - and plaintiff lacks specific information about any proceedings. Thus, prior to the City drafting their oppressive request, they knew that the plaintiff was unaware of "[t]he date of arrest and Docket or Indictment No." which the City demanded "must be completed by [our] office."

On July 11, 2008, we received two subpoenas that the City asserted would be served in five business days upon the New York State Division of Criminal Justice Services, in essence seeking the plaintiff's "rap sheets" [Exhibit 7]. On July 14, 2008, we wrote to the City and voiced our objection to their proposed subpoenas, and sought, again in good faith, to resolve the issue without the need for judicial intervention. We made clear that there is no relevance to any prior contacts that the plaintiff may have had with law enforcement [Exhibit 8].  By their July 14, 2008 letter, discussed *supra*, and annexed as Exhibit 3, the City asserted that the plaintiff's prior arrests "bear directly on the plaintiff's purported claims of emotional and psychological damage resulting from the incident." Then relying on Judge Francis' decision in Schiller v. City of New York, 04Civ.7922(KMK)(JCF),

04Civ.7921(KMK)(JCF), 05Civ.8453(KMK)(JCF) (S.D.N.Y. December 7, 2006), the City claims that "courts have routinely held that emotional damages are diminished by subsequent arrests." In Schiller, by his admission, plaintiff Ed Hedemann had been arrested numerous times, and convicted and incarcerated at least once. Moreover, Hedemann affirmatively placed himself in the situation wherein he was arrested (the Republican National Convention protests) which ultimately resulted in the Schiller lawsuit. Moreover, in Schiller, Hedemann's claimed emotional and psychological injuries appear to be the brunt of his complaint. Here, however, the plaintiff did not affirmatively seek to be arrested or detained. Moreover, the plaintiff has no prior convictions. Furthermore, and quite critically, not only was the plaintiff's arrest and detention unlawful, but he was physically injured as a result. The main thrust of the plaintiff's claims are his mistreatment as a disabled person, and the resulting physical injury under color of law. Schiller is a far cry from the facts of this case.

In New York, C.P.L. 160.50 provides a statutory privilege for sealed criminal history records. In re Scott D., 13 A.D.3d 622 (2nd Dept. 2004). While that privilege could be waived by suing as a result of that arrest - the privilege is only waived for the arrest sued on. Wright v. Snow, 175 A.D.2d 451 (3rd Dept. 1991), *appeal dismissed*, 79 N.Y.2d 822 (1991). Thus, a person may not use the privilege as a sword and a shield. Here, the plaintiff has authorized disclosure of his sealed records pertaining to the arrest and detention which gave rise to this lawsuit. The plaintiff has not waived his privilege as to other arrests which resulted in dismissals. Furthermore, in New York, the "disclosure of information contained in the criminal history file . . . maintained by DCJS, including any and all information contained in such files" is considered "an unwarranted invasion of personal privacy." 9 NYCRR 6150.4(b)(6).

As it is clear that the defendants are attempting to subject the plaintiff to continued "annoyance, embarrassment, [and] oppression" a protective order pursuant to Rule 26 (c)(1)(A) "forbidding the disclosure or discovery" should issue to prevent the defendants' from pursuing their fishing expedition into sealed records which resulted from law enforcement contact not caused or initiated by the plaintiff, and unrelated to the instant matter. Moreover, equally proper is an Order Quashing these subpoenas pursuant to Rule 45(c)(3)(A)(iii), as the defendants' demand "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Finally, we have re-asked the City to produce documents and materials, formally requested in November 2007; the City's good faith will obviate another motion.

Court conference: I am the attorney of record in this case. I am leaving for out-of-town, Washington, D.C., starting at 4:00 P,M, today, consistent with my obligations as Chair of the National Advisory Council on South Asian Affairs, till Friday. Monday July 21, 2008, till July 27, 2008, I will be in Berlin. Therefore, I will be unavailable. I request a telephone conference on July 28 or 29, 2008. I am in Court in July 30, 2008 and conducting federal depositions on July 31, 2008.

We await Your Honor's guidance and mandate.

Respectfully,
/s/
Ravi Batra, Esq. (RB4299)

Encls.
c: Gabriel Harvis, Esq. (By ECF)

marcus/071508compelprotectquash